IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>JOSHUA WILLIAMS,<br>    Defendant. | )<br>)<br>)<br>)  Case No. 24-cr-30036<br>)<br>)<br>)<br>) |

OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Defendant Joshua Williams moves to dismiss the single-count indictment charging him with illegal possession of a firearm by a felon, arguing Section 922(g)(1) is unconstitutional as applied to him under the United States Supreme Court's decisions in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 144 S. Ct. 1889 (2024). For the following reasons, Defendant's Motion to Dismiss Indictment is DENIED. (Doc. 14).

I.   **LEGAL STANDARD**

Rule 12(b)(3) authorizes a defendant to dismiss an indictment prior to trial if the indictment contains a defect. Fed. R. Crim. P. 12(b)(3)(B)(v). To succeed on a facial challenge to the constitutionality of a statute, the movant must show that the statute is unconstitutional in all applications. *City of L.A. v. Patel*, 576 U.S. 409, 415 (2015). The challenger must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In an as-applied challenge, the

movant must show that the statute is unconstitutional as applied to the particular facts of their case. *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

## II.     DISCUSSION

Defendant argues that the Second Amendment covers § 922(g)(1)'s permanent prohibition on firearm possession and encompasses felons as members of "the people" who have the right "to keep and bear Arms." Defendant further argues without a history of similar laws, the Government cannot demonstrate that § 922(g)(1)'s permanent deprivation is consistent with the Nation's historical tradition of firearm regulation.

Citing the numerous courts since *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) that have upheld the constitutionality of § 922(g)(1), the Government asks the Court to hold that (1) the plain text of the Second Amendment does not presumptively protect the right of felons to possess firearms; and (2) even if it did, § 922(g)(1) is constitutional as applied to all felons because it "is consistent with the Nation's historical tradition of firearm regulation" under *Bruen*.

The Government contends that, assuming the Second Amendment's text encompasses felons' possession of firearms, Defendant's challenge to § 922(g)(1) fails because the "regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms" under *Bruen*. There is a historical tradition of legislatures enacting regulations to disarm categories of individuals dating back to England and continues through the founding era. Specifically, the Government points to two types of historical laws: (1) laws categorically disqualifying groups who were

untrustworthy adherents to the law from possessing firearms, and (2) laws authorizing capital punishment and estate forfeiture for felonies.

### A. Section 922(g)(1) and Supreme Court Precedent

Section 922(g)(1) makes it an offense for a person "who has been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. Based on the framework articulated by the Supreme Court in *Bruen*, Defendant alleges § 922(g)(1) violates the Second Amendment and the Indictment must be dismissed.

Prior to *Bruen*, the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008), noted the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581. The Court explained that, "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not just an unspecified subset." *Id.* at 580. Based on that language, Defendant contends the Second Amendment applies to felons and non-felons alike. However, the Court in *Heller* further held that the Second Amendment guarantees the right of "law-abiding, responsible citizens" to keep and bear arms for self-defense, but noted that the right to keep and bear arms "is not unlimited" and remains subject to "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons." *Id.* at 635, 626-27; *see McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (extending *Heller* to state and local governments while reiterating that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'").

The Supreme Court has repeatedly stated that "the people" protected by the Second Amendment include "ordinary, law-abiding, adult citizens," *see Bruen*, 597 U.S. at 31-32, who are "members of the political community," *see Heller*, 554 U.S. at 580; *see also McDonald*, 561 U.S. at 786 (emphasizing *Heller*'s holding). The first sentence of *Bruen* refers to the "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" as protected by the Second Amendment. *Bruen*, 597 U.S. at 8-9. The Court reiterated that the Second Amendment "surely elevates above all interests the right of law-abiding, responsible citizens to use arms" for self-defense. *Id.* at 26 (quoting *Heller*, 554 U.S. at 635). The final paragraph of the majority opinion in *Bruen* states in part: "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 71. Thus, *Bruen* and *Heller* clearly articulate that the Second Amendment protects the right of responsible, law-abiding citizens to possess firearms.

In *Bruen*, the Supreme Court announced that lower courts should no longer balance interests such as an individual's right to possess a firearm and the state's commitment to promoting personal or public safety to determine the constitutionality of the challenged restriction. Based on the Second Amendment's text and the applicable history of firearms regulation, the government now bears the burden of "affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating

that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. Because people convicted of felonies existed in the United States when the Second Amendment was ratified in 1791, it follows that § 922(g)(1) addresses a "general societal problem that has persisted since the 18th century." *Bruen*, 597 U.S. at 26.

When a challenged regulation addresses a longstanding societal problem, "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* If "the Founders themselves could have adopted" a particular regulation to confront a longstanding problem and did not do so, that could suggest that the law today is unconstitutional. *Id.* For "modern regulations that were unimaginable at the founding," the government must produce historical evidence that is "relevantly similar." *Bruen*, 597 U.S. at 28-29. "[I]f earlier generations addressed the societal problem, but did so through materially different means, that could also be evidence that a modern regulation is unconstitutional." *Id.* at 26-27.

The Supreme Court instructed courts to identify historical analogues to modern firearm regulations by assessing "how and why regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29. While the Court in *Bruen* did not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," it directed courts to weigh as central considerations "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* The Court further stated:

> To be clear, analogical reasoning under the Second Amendment is neither a regulatory straitjacket nor a regulatory blank check. On the one hand, courts should not uphold every modern law that remotely resembles a historical analogue because doing so risks endorsing outliers that our ancestors would never have accepted. On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

*Id.* at 30 (internal quotation marks and citations omitted).

### B. *United States v. Rahimi*

In *United States v. Rahimi*, 144 S. Ct. 1889 (2024), the Supreme Court considered the constitutionality of 18 U.S.C. § 922(g)(8), which prohibits an individual subject to a domestic violence restraining order from possessing a firearm if the order includes a finding that he "represents a credible threat to the physical safety of an intimate partner," or a child of the partner or individual. *Id.* at 1894. In considering the constitutionality of the statute, the Court examined historical surety laws, which "authorized magistrates to require individuals suspected of future misbehavior to post a bond" and "going armed laws," which "prohibited riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land." *Id.* at 1900-01 (citation omitted). The Court noted the "two distinct legal regimes," established that "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 1896, 1899. In rejecting Rahimi's challenge to §922(g)(8), the Court held that "[t]aken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1901.

In considering whether an individual with felony convictions is permitted under the Second Amendment to possess both firearms and ammunition, the Seventh Circuit in a case decided prior to *Rahimi* noted that the defendant's argument is hard to square with *Heller*'s unequivocal statement that "longstanding prohibitions on the possession of firearms by felons" are valid. *United States v. Gay*, 98 F.4th 843, 846 (7th Cir 2024) (citation omitted). Moreover, the Supreme Court in *McDonald* reiterated that all reservations and provisos in *Heller* remain valid. *Id.* "And in the Court's most recent Second Amendment decision . . . *Bruen* . . . Justices Alito and Kavanaugh, whose votes were essential to the majority, wrote separately to say that *Bruen* did not change anything about *Heller*." *Id.* (citing *Bruen*, 597 U.S. at 72, 142 S. Ct. 2111 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 80-81, 142 S. Ct. 2111 (Kavanaugh, J., joined by the Chief Justice, concurring) (endorsing the statement in *Heller* about the propriety of denying firearms to felons)). *Id.*

### C. Defendant's Challenges to § 922(g)(1)

The Seventh Circuit in *United States v. Gay*, 98 F.4th 843, 846-47 (7th Cir. 2024), "assume[d] for the sake of argument that there is *some* room for as-applied challenges, but that assumption does not assist Gay." *Id.* The Seventh Circuit noted the emphasis in *Bruen* on the phrase "law-abiding, responsible citizens" or similar language and determined that it did not describe Gay, who had been convicted of 22 felonies, including

aggravated battery of a peace officer and possession of a weapon in prison. *Id.* at 847. Gay was also on parole and subject to a condition that he would not possess a firearm at the time of underlying offense. *Id.* The Seventh Circuit concluded, "Just as *Samson* holds that parolees lack the same privacy rights as free persons, we conclude that parolees lack the same armament rights as free persons." *Id.* (comparing *United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024) (person on bail awaiting trial lacks a constitutional right to carry firearms)). Therefore, the Seventh Circuit concluded Gay's challenge could not succeed because he is not a "law-abiding, responsible" person who has a constitutional right to possess firearms. *Id.*

To the extent that some individuals might be able to raise a successful as-applied challenge to § 922(g)(1), this Court concludes Defendant would not be one of those individuals under the same reasoning the Seventh Circuit applied to Mr. Gay. Mr. Williams has five prior felony convictions, including possession of a controlled substance, aggravated battery, and delivery of a controlled substance. Significantly, at the time of the offense in question, Defendant was on probation for an aggravated battery conviction which prohibited him from possessing a firearm. Defendant is accused of violating his terms of probation by possessing the firearm that formed the offense conduct in this case. Consistent with the Seventh Circuit's holding in *Gay*, the Court finds individuals who are under court supervision such as probation or supervised release lack the same armament rights as free persons.

### III. CONCLUSION

For the reasons stated herein, Defendant's as-applied challenge to § 922(g)(1) cannot succeed following the Seventh Circuit's decision in *Gay*. Defendant's criminal history and probation status preclude him being among the "law-abiding, responsible citizens" who retain the constitutional right to possess firearms for self-defense. Defendant's Motion to Dismiss (Doc. 14) is DENIED.

ENTER: January 7, 2025

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE